SCHOTT, Judge.
Plaintiff, Mrs. Pauline Rosevally, and her husband, Henry E. Arnold, have appealed *1179 from a dismissal of their suit against defendants, T. L. James & Company, Inc., Atlas Construction Company, Inc., and the Louisiana Department of Highways. The issue is a factual one as to whether the trial judge was clearly wrong in dismissing plaintiff’s suit.
Plaintiff, Pauline Rosevally, was driving the automobile of her co-plaintiff, Henry H. Arnold, (plaintiffs were not yet married at the time) in a northerly direction on Highway 23 in Plaquemines Parish. The highway consisted of two lanes and at the point where the accident occurred it was being resurfaced with an asphalt overlay of one and one-half inches thick. This work was being performed by the defendant companies under a contract with the highway department.
It was the practice of the construction crew to overlay one lane at a time but to finish a day’s work with both lanes being completed to the same point. On the day of the accident they completed the north bound lane for some distance southward from the point where the south bound lane had been completed when they were forced to stop because of some problem with the quality of the asphalt. The southern end of the overlay in the north bound lane was tapered down to the level of the original road surface but along the center of the highway the north bound lane was about an inch and a half higher than the south bound lane. The procedure employed by the construction crew was to place on the original surface a tacking compound which was essentially an oil to provide adhesion for the overlay of asphalt, and while the record is not clear as to extent of the oil in the vicinity when the crew shut down its operations there was apparently some oil in the area.
As plaintiff approached the scene from the south just before she reached the point where the overlay began in the north bound lane, she turned into the south bound lane, where she traveled for some distance, and then entered the north bound lane. In doing so, she crossed over the one and one-half inch rise of the new asphalt overlay, and after getting into the north bound lane on the new asphalt she began to skid, lost control of her automobile and eventually turned over on the right shoulder of the road coming to rest against a utility pole. All this took place in good weather at about 3:30 PM on November 22, 1974.
Defendants placed into evidence photographs of the highway approaching the scene of the accident and the scene itself. Some distance south of the asphalt overlay is a curve to the south east. Some distance before plaintiff reached that curve was a temporary highway warning sign reading “Fresh Oil.” This sign was followed shortly by a permanent highway sign showing the curve and the suggested speed of 40 miles per hour. In the curve was a second temporary warning sign reading “Low Shoulder.” After the road straightened to the north and before the asphalt overlay began in the north bound lane were two temporary warning signs mounted one over the other and reading “Bump” and “Uneven Center Line.” The photographs clearly show the gradual incline, although short, from the original surface onto the asphalt overlay in the north bound lane.
According to plaintiff, she was going about 45 miles per hour as she approached the curve and slowed down to 40 when she saw the first sign. She continued to decrease her speed as she passed the other signs but decided to avoid “going up' the bump” in the north bound lane by taking the south bound lane. She did not notice that the asphalt was tapered in her lane but was under the impression that it was a straight dropoff. She continued to slow down “until I thought I was going at a slow enough rate so that I could go in the north bound lane.” However, after all four of her wheels were on the north bound lane she started swerving, applied her brakes but could not get control of her car again as it swerved down the road, went off the shoulder and flipped over. Asked how fast she was going when she crossed into the north bound lane, she replied that she “couldn’t have been going very much more than 30 miles an hour.”
*1180 Her passenger, Lynn Shackelford, essentially corroborated her testimony.
The accident was investigated by a state policeman who testified that he measured 400 feet of skid marks from one tire and 342 feet of skid marks from the other. Over the objection of plaintiffs he was permitted to testify that he estimated plaintiff’s speed to be 80 miles per hour.
In this court plaintiffs argue that the trial judge erred in failing to find that the defendants breached their duty to provide adequate warnings of the condition of the road, particularly in that the “bump” sign was located too close to the south end of the new overlay so that plaintiff was justified in going around this bump. She maintains that the uneven surfaces of the two lanes was the ultimate cause of her vehicle going out of control. She insists she was not exceeding a safe speed and argues that the policeman’s estimate of her speed was inadmissible, it was wrongfully considered by the trial judge and it should be disregarded by this court. She also argues entitlement to recovery on the basis of strict liability arising out of LSA C.C. Arts. 2317 and 2322 as developed in Loescher v. Parr, 324 So.2d 441 (La.1976).
Regardless of what theory applies, it was plaintiff’s burden to prove either negligence on the part of defendants or that the highway was defective. Under a negligence approach plaintiff’s recovery would be barred by her own contributory negligence. Under a strict liability approach her recovery would be barred if the accident was due to her fault. The burden of proof of contributory negligence or victim fault was on defendants. Although the trial judge gave no reasons for his judgment he necessarily concluded either that plaintiff failed to carry her own burden of proof or that defendants carried theirs as to the said defenses. The appellate court will not reverse the trial court on this factual determination unless the record shows that such determination was clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1975).
From our examination of the record we cannot conclude that the trial court was clearly wrong. The photographs graphically demonstrate that the temporary warning signs began far enough from the overlay to warn plaintiff of the approaching hazard and to place a duty on her to proceed with extreme caution. Her duty was to travel at a rate of speed which was reasonable under the circumstances and to operate her automobile in a reasonable manner. Had she done so this accident would never have occurred. She did not provide a satisfactory explanation for misjudging the tapered approach to the overlay as a straight drop-off and again misjudging the speed of her own vehicle when she went up on the overlay from the south to the north bound lane just before she lost control of her automobile. Whether the policeman’s testimony that she was driving 80 miles per hour was properly admitted or not there is a clear inference of excessive speed from the length of the skid marks her automobile left combined with the fact that her car turned over after getting on the shoulder and struck the utility pole with enough force to cause it to lean.
Having concluded that the judgment of the trial court was not clearly wrong, we affirm.
AFFIRMED.