682 So.2d 946 (1996)
Ernestine S. MIGUES, PlaintiffAppellant,
v.
CITY OF LAKE CHARLES, DefendantAppellee.
No. 96-626.
Court of Appeal of Louisiana, Third Circuit.
November 6, 1996.
*947 David B. McCain, Lake Charles, for Plaintiff-Appellant.
Charles V. Musso, Jr., Lake Charles, for City of Lake Charles.
Before THIBODEAUX, COOKS and GREMILLION, JJ.
THIBODEAUX, Judge.
Ernestine S. Migues filed a personal injury suit against the City of Lake Charles to recover damages resulting from injuries she sustained when she fell while walking down the steps at the Lake Charles Civic Center following a performance of the musical, "Cats." The trial court imposed eighty percent (80%) liability on the City of Lake Charles and twenty percent (20%) liability on Ms. Migues. The trial judge awarded Ms. Migues $5,000.00 in general damages. It is from this judgment that Ms. Migues appeals asserting that the $5,000.00 award is inadequate and that the trial court's apportionment of fault is too great. The City of Lake Charles answers the appeal and questions the trial court's finding of liability, its apportionment of fault, and Ms. Migues' damage award.
We affirm for the following reasons.

I.

ISSUES
The issues on appeal are whether the trial court erred in: (1) its finding of an unreasonable risk of harm which caused Ms. Migues' fall; (2) its apportionment of fault; and, (3) its award of damages to Ms. Migues in consideration of the aggravation of her preexisting arthritic condition.

II.

FACTS
On the night of March 29, 1994, Ms. Migues and her stepdaughter, Patsy Savoie, attended the musical, "Cats" at the Lake Charles Civic Center. Ms. Migues drove *948 herself and Ms. Savoie to the performance. They had seats in the balcony of the theater and Ms. Migues maneuvered the balcony steps without any problems or assistance. Ms. Migues, who was eighty-one years old at the time, has taken a number of medications for her various ailments since the early 1980's. She originally experienced dizziness as a side effect with some of her medications; however, the problem was later corrected.
After the production, Ms. Migues lost her balance and fell while traversing the steps located outside the Lake Charles Civic Center. At the time of the accident, there were no handrails installed along the stairs at the Civic Center. As she approached the steps, she mentioned that the lack of handrails was a dangerous condition, especially for older people such as herself. She then began to step down on each stair, one foot at a time, putting both feet on each stair as she went down. She did not request Ms. Savoie's assistance in maneuvering the steps. She also did not choose to use a ramp which is normally used for deliveries located 45 to 60 feet away from her path.
What caused her to fall is an issue which is disputed. However, a pipe stub filled with concrete which is three quarters of an inch high is located in the area in which Ms. Migues traversed the steps. Previously, employees of the City of Lake Charles cut off some old fencing which created the pipe stub. The trial court found that Ms. Migues stepped on the pipe stub, lost her balance and then fell.
Ms. Migues fell face forward, breaking her nose and cracking a tooth in the fall. She also received lacerations on one hand and above an eye. She is no longer able to keep her once active and independent lifestyle because her pre-existing arthritic condition has worsened since the fall.

III.

LAW AND DISCUSSION
The City of Lake Charles argues that the trial court erred in finding that the pipe stub created an unreasonable risk of harm. Under either a negligence or a strict liability theory, a plaintiff must prove that: 1) the object which caused the harm was in the defendant's custody; 2) the object embodied a condition which created an unreasonable risk of harm to the plaintiff; and, 3) the condition of the object caused the plaintiff's injuries. Oster v. Dep't of Transp. and Dev., 582 So.2d 1285 (La.1991). The defendant does not contest its custody of the Lake Charles Civic Center. However, the defendant does challenge whether the pipe stub created an unreasonable risk of harm to the plaintiff which, in turn, caused the plaintiff's injury.
A condition creates an unreasonable risk of harm when the harm is unreasonable to a reasonable and ordinary plaintiff exercising ordinary care under the circumstances. Scroggins v. Sewerage and Water Board, 533 So.2d 132 (La.App. 4 Cir.1988). Determining reasonableness involves balancing the likelihood of the risk against the utility of the object involved. Hunt v. City Stores, Inc., 387 So.2d 585 (La.1980). Moral, social, and economic values also should be considered. Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106 (La.1990). This analysis allows the court to determine which risks are to be encompassed by codal obligations without a mechanical application of a particular criterion. Entrevia v. Hood, 427 So.2d 1146 (La.1983).
The City of Lake Charles argues that Ms. Migues was not an ordinary plaintiff exercising ordinary care under the circumstances because she is an elderly person who is taking medication and did not walk 45 to 60 feet out of her path to use a ramp meant for delivery vehicles. Since the trial court found that many elderly people attend events at the Civic Center, Ms. Migues is certainly someone who would be considered to be an ordinary plaintiff in a suit involving the Civic Center. The trial court also found it unlikely that the medication would have had any affect on Ms. Migues at the point in time in which she fell. A reasonable person exercising ordinary care would take the most efficient route to his car when leaving a building such as the Civic Center. The most efficient route available to Ms. Migues was to walk down the stairs which she used.
*949 The likelihood of an accident such as Ms. Migues' is relatively high. Before the current handrails were installed at the Civic Center, the trial court determined that women wearing high heels and the elderly may have stumbled on this pipe stub and fallen. Statistics of the number of people who may have fallen in the past does not negate the fact that reasonable and ordinary people do stumble and fall down stairs when there is some defect in the stair.
Certainly, the steps to the Civic Center have great utility. However, a pipe stub which is three quarters of an inch higher than the remainder of the step is not necessary to the use and functioning of the Civic Center. As the trial court noted, the pipe stub may be easily removed, creating only a small burden on the City.
The manifest error rule is used to resolve any factual disputes or irregularities found in the record and in the rulings of the trial court. An appellate court cannot reverse a trial court's or a jury's findings of fact in absence of manifest error or unless the findings are clearly wrong. Stobart v. State Through Dep't of Transp. and Dev., 617 So.2d 880 (La.1993). A proper review requires both a determination that the record establishes that the finding is clearly wrong and that there is no reasonable factual basis for the findings of the trial court. Stobart, 617 So.2d 880. Use of this manifest error standard shields the factual findings of the trial court on appellate review. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Once the factual findings are reviewed by the appellate court under the manifest error standard, then the findings for which manifest error do not apply are used to determine the sufficiency of the evidence. This final act, which determines the ultimate conclusion of whether an unreasonable risk of harm was created, concerns a legal issue. Green v. City of Thibodaux, 94-1000 (La. App. 1 Cir. 10/6/95); 671 So.2d 399, writ denied, 95-2706 (La.2/28/96); 668 So.2d 366. As a question of law, the issue of reasonableness is not subject to the manifest error rule. Dixon v. Schwegmann Giant Supermarkets, 95-2048 (La.App. 1 Cir. 5/10/96); 673 So.2d 696.
Whether the evidence is sufficient to establish unreasonableness is a part of the determination of whether the duty to prevent an unreasonable risk of harm to others has been fulfilled. The Louisiana Supreme Court has interpreted La.Civ.Code art. 2317 to provide "that the person who has the garde of a thing shall be strictly liable for... his legal responsibility being based on the breach of his legal obligation to keep his thing in such condition that it does no damage to others." King v. Louviere, 543 So.2d 1327, 1328 (La.1989) citing Loescher v. Parr, 324 So.2d 441, 447-448 (La.1975). Whether a person has a duty to protect others from unreasonable risks of harm from objects in his custody is an issue for the courts to resolve. Douglas v. State Dep't of Culture, Recreation and Tourism, 93-1049 (La.App. 5 Cir. 4/26/94); 636 So.2d 1098 citing Kent v. Gulf States Utilities Co., 398 So.2d 560 (La. App. 1 Cir.1980). To determine whether that duty has been met, the court must conduct a de novo review of the record to determine whether the risk of harm was sufficiently reasonable or unreasonable.
This standard allows the trial court to perform its duty of finding facts and allows the appellate court to apply those facts to legal principles upon its review. Although the Third Circuit has used the manifest error standard in the past when determining whether an unreasonable risk of harm was created, it did not differentiate between finding facts which establish the existence of defects and the ultimate conclusion that an unreasonable risk of harm exists. See Tullis v. Rapides Police Jury, 95-905 (La.App. 3 Cir. 1/17/96); 670 So.2d 245; Miller v. State, 95-548 (La.App. 3 Cir. 3/20/96); 679 So.2d 134; Hataway v. Jeep Corp., 96-166 (La.App. 3 Cir. 8/14/96); 679 So.2d 913. The trial court should be given deference with respect to the findings of fact which would support the determination that an unreasonable risk of harm was created. However, once the appropriate deference is extended and manifest error does not exist, then the application of those facts to determine an unreasonable risk of harm is a matter of law.
*950 The trial court properly found that the pipe stub was three quarters of an inch high at the crown and that it was on a step surface where substantial numbers of people walk. The court determined that the pipe stub could be dangerous for women wearing high heeled shoes, the elderly, or potentially anyone who unexpectedly has an instability. Moreover, the plaintiff's and defendant's expert each stated that he would classify the pipe stub as a hazard. The court further found that a substantial number of people attend the Civic Center on a yearly basis, many of whom are elderly people. There was no manifest error in these factual findings. On balance, the likelihood of the harm outweighs the utility of the pipe stub remaining in the step. This evidence is sufficient to establish that the pipe stub created an unreasonable risk of harm to the visitors of the Civic Center.
The City of Lake Charles also argues that even if the pipe stub did consist of an unreasonable risk of harm, it did not contribute to the plaintiff's fall. It alleges that Ms. Migues' fall was a result of lightheadedness or dizziness. However, it appears to be much more likely that she fell because something in the ground made her unsteady. Ms. Migues' prior episodes of dizziness were side effects of her medications. She had not taken her medication since the morning before the accident and probably would not have become dizzy from her medication at the exact moment that she was walking down the stairs at the Civic Center. Additionally, she had not complained of dizziness to her doctors for several months.
Ms. Migues' physician did note that Ms. Migues told him that she fell and felt lightheaded. However, the doctor was not concerned with the timing of the events such that she may have felt dizzy which caused her to pass out, or she may have fallen and then felt lightheaded as a result of her fall. The physician simply noted the dizziness in his report. The emergency room records refer to her falling and then losing consciousness. These records, as the trial court noted, are probably more reliable in deciphering the actual order of events since those who work in the emergency room are more concerned with traumatic events and emergencies.
An appellate court cannot reverse a trial court's findings of fact in absence of manifest error. Stobart v. State Through Dep't of Transp. and Dev., 617 So.2d 880 (La.1993). The trial court's findings are not clearly wrong. The factual findings of the trial court are reasonable based on the record as a whole.
As Ms. Migues walked down the steps at the Civic Center, one step at a time, she lost her balance and fell. The trial court found that a pipe stub which protrudes three quarters of an inch from the step which is closest to the ground caused Ms. Migues to lose her balance. She put her right foot down on the step and it felt steady because it most likely landed on the portion of the step where the pipe stub does not reach. She then brought her left foot down to the same step and placed it on a portion of the pipe stub which felt unsteady. She then lost her balance and fell.
The City of Lake Charles also argues that the assessment of 20% comparative fault on the part of Ms. Migues is too low because she knew that walking down the steps at the Civic Center was a dangerous activity for her. In Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La.1985), the court determined the factors that should be considered when ascertaining comparative fault. These factors are:
1) whether the conduct resulted from inadvertence or involved an awareness of the danger;
2) how great a risk was created by the conduct;
3) the significance of what was sought by the conduct;
4) the capacities of the actor, whether superior or inferior; and,
5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.
Watson, 469 So.2d at 974.
Courts should also consider the relationship between the fault or negligent conduct and the harm to the plaintiff and also concepts *951 such as last clear chance. Watson, 469 So.2d 967.
Apportionment of fault is a factual question and deference should be given to the trial court's determination. Lee v. Missouri Pac. R.R. Co., 540 So.2d 287 (La.1989). The trial court's findings of fact are not set aside absent manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989). If there is a conflict in testimony, then the appellate court should defer to reasonable evaluations and inferences of fact made by the trial court. Rosell, 549 So.2d 840.
In consideration of the causal relationship between Ms. Migues and the City, the pipe stub was the direct cause of her fall. But for the existence of the pipe stub, she would not have fallen. However, plaintiff was aware that she may not be able to manage the stairs in a safe manner. Ms. Migues' failure to ask her stepdaughter for assistance contributed to her fall. However, the fact that plaintiff did not ask her stepdaughter for assistance was not the direct cause of her fall or injury.
Since Ms. Migues' actions were an indirect cause of her fall, she should be apportioned a smaller amount of fault than the City. The City cannot erase its fault simply because no one else has tripped and fallen on the pipe stub. The trial court did not abuse its discretion in assessing 20% fault to the plaintiff.
Plaintiff also seeks an increase in her award for general damages relating to her arthritic condition. An appellate court should increase or decrease an award only when the award is "beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances." Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993). The amount of damages should not be increased or decreased unless the appellate court, upon review of the facts, discovers a clear abuse of discretion. Reck v. Stevens, 373 So.2d 498 (La.1979).
The trial court's damage award of $5,000.00 was reasonable under the circumstances. Ms. Migues is an elderly person. Not only did she not complain to her physician regarding the change in her arthritic condition, he also did not notice any change in her condition from an objective medical standpoint. She had several medical conditions, including arthritis, prior to the accident. These factors have decreased her mobility and life patterns. However, as the trial court noted, the trauma of her fall must have some impact on her life and may have contributed to some of her changes in mobility. The trial court did not abuse its discretion by granting an award of $5,000.00 in consideration of the probability that the fall had some type of adverse impact on Ms. Migues' arthritic condition.

IV.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. All costs are assessed against the City of Lake Charles.
AFFIRMED.