CHARLES R. JONES, Judge.
The Appellant, the Regional Transit Authority of New Orleans, appeals the judgment of the district court granting partial summary judgment in favor of the Appel-lee, Joyce Woods, on the issue of liability. The Regional Transit Authority also seeks reversal of the judgment of the district court awarding damages. We amend and affirm as amended.
Facts
Ms. Woods exited a transit bus owned and operated by the Regional Transit Authority of New Orleans (hereinafter the “RTA”) on February 13, 1998, at the corner of Elysian Fields Avenue and Gentilly Boulevard. As she exited the bus, Ms. Woods tripped over a piece of metal embedded in concrete. Later, the piece of metal was determined to be the remains of a pole of a “cut off’ bus stop sign owned, maintained and controlled by the RTA. Ms. Woods shattered her right second toe when she hit the metal remains of the pole. After two years of what Ms. Woods described as excruciating pain, her toe was amputated. Years prior to this incident, Ms. Woods’ big toe on the same foot was amputated as a result of a lawn mower accident. However, from this incident, Ms. Woods experience problems with her gait, balance and walking and coupled with the pain, she resolved to undergo surgery.
Ms. Woods filed suit in the Civil District Court for the Parish of Orleans against the City of New Orleans and the RTA. On May 12, 1999, the RTA admitted that it owned, maintained, and controlled the pole on which Ms. Woods tripped. Thereafter, the City and Ms. Woods filed a joint motion to dismiss the City from suit with prejudice that was granted by the district court. On October 24, 2001, Ms. Woods filed an Amended Petition alleging that the RTA was liable under La. Civ.Code arts. 2317 and 2317.1. She then filed a Motion for Partial Summary Judgment on the issue of Lability under those articles. Ms. Wood’s motion was granted and a bench trial was held on the issues of causation and damages. Judgment was subsequently rendered in favor of Ms. Woods for the following: $400,000 in general damages; $4,878.55 in past medical expenses; $10,000 in future medical expenses; and $1,627.26 in past wages. It is from this judgment that the RTA takes this timely appeal.
Argument
In its first assignment of error, the RTA argues that Ms. Woods failed to prove under La. Civ.Code arts. 2317 and 2317.1 that the RTA was liable, and that the district court erred by drawing inferences in violation of the summary judgment procedural articles. The law on which the RTA relies reads as follows:
Art. 2317. Acts of others and of things in custody
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custo *1225 dy. This, however, is to be understood with the following modifications.
Art. 2317.1. Damage caused by ruin, vice, or defect in things
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
Ms. Woods argues that the RTA made a judicial admission that it was liable for the pole. She further relies on Davis v. Diamond Shamrock Refining and Marketing Co., 34,309 (La.App. 2 Cir. 12/6/00), 774 So.2d 1076, which held that recovery under the theory of negligence or strict liability requires the plaintiff to prove that the defendant had custody of the thing causing the injury; that it contained a defect, that is, a condition creating an unreasonable risk of harm; and that the defective condition caused the plaintiffs injury.
In Migues v. City of Lake Charles, 96-626, (La.App. 3 Cir. 11/6/96), 682 So.2d 946, the plaintiff stepped on a pipe stub at the Lake Charles Civic Center and lost her balance and fell. The defendant challenged whether the pipe stub created an unreasonable risk of harm to the plaintiff, which, in turn, caused her injury. Although our colleagues in the Third Circuit found comparative fault among the parties, the Court also reasoned that a substantial number of people attend the Civic Center on a yearly basis and that the likelihood of the harm outweighed the utility of the pipe stub remaining in the step which was sufficient to establish that the pipe stub created an unreasonable risk of harm to the visitors of the civic center. Id at 950.
Further, La. R.S. 9:2800 provides:
A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
B. Where other constructions are placed upon state property by someone other than the state, and the right to keep the improvements on the property has expired, the state shall not be responsible for any damages caused thereby unless the state affirmatively takes control of and utilizes the improvement for the state’s benefit and use.
C. Except as provided for in Subsections A and B of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
D. Constructive notice shall mean the existence of facts which infer actual knowledge.
E. A public entity that responds to or makes an examination or inspection of any public site or area in response to reports or complaints of a defective condition on property of which the entity has no ownership or control and that takes steps to forewarn or alert the public of such defective condition, such as erecting barricades or warning devices in or adjacent to an area, does not thereby gain custody, control, or garde of the area or assume a duty to prevent personal injury, wrongful death, property damage, or other loss as to render the *1226 public entity liable unless it is shown that the entity failed to notify the public entity which does have care and custody of the property of the defect within a reasonable length of time.
F. A violation of the rules and regulations promulgated by a public entity is not negligence per se.
G. (1) “Public entity” means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, | .¡instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, in-strumentalities, officers, officials, and employees of such political subdivisions. Public entity also includes housing authorities, as defined in R.S. 40:384(15), and their commissioners and other officers and employees and sewerage and water boards and them employees, servants, agents, or subcontractors.
(2) “Public site or area” means any publicly owned or common thing, or any privately owned property over which the public’s access is not prohibited, limited, or restricted in some manner including those areas of unrestricted access such as streets, sidewalks, parks, or public squares.
The RTA further relies on the obviously distinguishable case of Jones v. Hawkins, 98-1259, p. 4 (La 3/19/99) 731 So.2d 216, 218, which states:
[F]or a plaintiff to successfully recover against a public entity for damages due to road defects, he must prove: (1) the thing that caused his damages was in the defendant’s custody; (2) the thing was defective due to a condition that created an unreasonable risk of harm; (3) the defendant had actual or constructive notice of the defect, yet did not take steps to correct it within a reasonable period of time; and (4) the defect was a cause in fact of the plaintiffs harm, (emphasis added).
In the case at bar, there was no road defect. Although the court in Jones found that “the City’s duty to use reasonable care in maintaining its public ways does not encompass conducting periodic inspections of its streets, and the failure to conduct such inspections does not imply knowledge of a dangerous defect on those streets, we hold that the failure to conduct inspections does not impute to the City constructive knowledge of defects in its streets”, this Court is of the opinion that the City has more of a maintenance responsibility to the public citywide as opposed to the RTA, which is limited in its service area in comparison.
Although the RTA admits that it did not keep repair records reflecting the removal of the former pole and sign and the placement of a new pole and sign at the accident location, the RTA still could have raised an inference that two poles and signs existed simultaneously at the accident site by surveying all pole and sign locations for other sites that they service. If other two-pole, two-sign locations exist, then a reasonable inference would be raised that the RTA did have two simultaneously existing poles and signs at the accident site. The burden of proof would then shift to the plaintiff to prove otherwise.
The RTA offered no evidence to refute the fact that it had knowledge that one pole and sign was previously removed or destroyed necessitating a new pole and sign. While installing a new pole and sign, the RTA retained a duty to remediate the site of the old pole and sign such that the site did not create an unreasonable risk of harm for tripping to a person walking in the area either during the day or night. This the RTA failed to do, for the pole *1227 remenant (obviously a pipe or hollow pole, because the record reflects that the end of the pole sticking out of the concrete in which it was embedded was pinched closed) was protruding out of the concrete. By failing to remediate the site properly, the RTA retained garde over the pole stub and concrete in which it was embedded. The RTA clearly had constructive notice of the “vice or defect which caused damage prior to its occurrence.” La. R.S. 9:2800 C.
The RTA further argues that the district court drew inferences from the evidence presented. Since there is no question as to how Ms. Woods was injured, and that the RTA had custody of the pole, we find that the RTA’s admission of ownership of the pole is enough to find the RTA liable under La. Civ.Code arts. 2317 and 2317.1. Therefore, as Ms. Woods has met her burden of proof, we find that this argument is without merit.
In its second assignment of error, the RTA argues that the district court abused its discretion by awarding excessive damages to Ms. Woods in the following amounts:
$ 400,000 General Damages
$4,878.55 Past medical expenses
$ 10,000 Future medical expenses
$ 1,627.26 Past lost wages
Specifically, the RTA argues that the district court awarded Ms. Woods excessive damages for past medical expenses. We agree that the documentation Ms. Woods submitted to the district court from Charity Hospital included medical bills that were not the subject of the injury in question. The RTA has asked this Court to reduce the award for past medical expenses to $2,493.80. The RTA qualifies this reduction by subtracting a bill for Ms. Woods’ October 2000 surgery involving a scar on her right toe, and a nail bed excision on the right third toe; a bill from November 2000 for a pulmonary examination; and a bill from a December 2001 flu shot.
Ms. Woods, on the other hand, argues that the award for past medical expenses should only be reduced by $340, $12.50 for the cost of a flu shot and $325.50, the cost of the pulmonary function study.
Considering the record before this Court, and the RTA’s failure to object during trial when the Charity Hospital records were submitted into evidence, we reduce the award for past medical expenses by $340, thus awarding Ms. Woods $4,538.55.
The RTA further argues that the district court’s award of $400,000 in general damages was excessive because none of the medical evidence proved that amputation of Ms. Woods’ toe was necessary. The RTA relies on Marquez v. City Stores Co., 371 So.2d 810 (La.1979), wherein the Supreme Court reinstated damages in the amount of $7,500 for a young child who had half of his left great toe amputated following an escalator accident.
Our colleagues in the Third Circuit affirmed an award of $400,000 for a toe injury stating:
To award Hebert such a large amount, the jury must have determined that she suffered greatly with the pain. Considering Hebert’s particular injuries and the resulting chronic nature of her toe dislocations and pain, and, keeping in mind that we still must grant the jury’s finding some deference, we conclude that an award for $250,000.00 for pain and suffering and $150,000.00 for disfigurement are the highest reasonable amounts which were within the trier of fact’s discretion.
Hebert v. Podiatry Ins. Co. of America, 96-567, p. 19 (La.App. 3 Cir.1996), 688 So.2d 1107, 1118.
*1228 The evidence before the district court, upon its reasonable evaluation of credibility, furnished a reasonable factual basis for the district court’s finding, and we shall not disturb the award on appeal. Courteaux v. State ex rel. Dept. of Transp. and Development, 99-0353, p. 11 (La.App. 4 Cir. 9/22/99), 745 So.2d 91, 98. Further, the award as apportioned to the injury is not so high or so low as to shock the conscience. Id. at 14, 745 So.2d at 99.
The district court listened to the testimony and observed Ms. Woods. The district court was in a better posture than this Court to conclude that Ms. Woods is entitled to $400,000 in general damages. The award for general damages is not such that it “shocks the conscience” as to find that there was an abuse of discretion by the district court.
The RTA also argues that the award for future medical expenses in the amount of $10,000 was excessive. The RTA contends, that Ms. Woods failed to establish the necessity of future medical treatment to a reasonable degree of certainty citing Ceaser v. Stiner, 98-898, p. 7 (La.App. 3 Cir. 12/9/98), 729 So.2d 611, 615. The testimony of Ms. Woods’ treating physician, Dr. Christopher Marrero, established that it is possible that Ms. Woods may require a knee replacement in the future. However, Dr. Marrero testified that if necessary, he would administer a number of treatments prior to the replacement of her knee. We find that the district court was too speculative in finding that Ms. Woods would require knee surgery and awarding her $10,000.
Future medical expenses must be established with some degree of certainty, and an award of such cannot be predicted on mere speculation. Morris v. United Services Automobile Ass’n., 32,528, p. 7 (La.App. 2 Cir. 2/18/00), 756 So.2d 549, 557, citing Holt v. State Through Sept. of Trans. and Development, 28,183 (La.App. 2 Cir.4/3/96), 671 So.2d 1164. Awards for future medical expenses that may or may not be incurred require medical testimony that they are indicated and their probable costs. Id.; Kessler v. Southmark Corp., 25,941 (La.App. 2 Cir. 9/21/94), 643 So.2d 345. The plaintiff must show that, more probably than not, these expenses will be incurred. Morris, supra; Morrison v. Kappa Alpha Psi Fraternity, 31,805 (La.App. 2 Cir.5/7/99), 738 So.2d 1105, writs denied 99-1668, 99-1607, 99-1622 (La.9/24/99), 747 So.2d 1120, 749 So.2d 634, 749 So.2d 635.
However, in the instant case the RTA only requests that this Court reduce the award for future medical expenses to a total of $850. Finding that this argument has merit, and because the RTA does not contest the entire amount of future medical expenses, we reduce the award accordingly.
Decree
For the foregoing reasons we affirm the granting of the motion for partial summary judgment by the district court in favor of Joyce Woods. Further, we amend the award for past medical expenses to total $4,538.55, and future medical expenses to total $850, and we affirm the judgment as amended.
AMENDED; AFFIRMED AS AMENDED.