PAUL A. BONIN, Judge.
 

 | ¡¡Richard Moffitt was injured when the motorcycle he was riding at night struck an unmarked street repair site. Mr. Mof-fitt sued the New Orleans Sewerage & Water Board (NOS & WB), which had done subsurface repairs and backfilled the site with dirt and gravel while awaiting completion of the repair with new cement. After a bench trial, the trial court found the NOS & WB solely liable and awarded Mr. Moffitt general and special damages totaling $320,165.55. The NOS & WB sus-pensively appealed, arguing that the trial court erred in finding it liable, in not finding Mr. Moffitt at fault, and in awarding excessive damages. Concluding that the trial court’s findings of fact were not clearly wrong and that it did not abuse its discretion, we affirm its judgment and set forth our detailed reasons below.
 

 I
 

 On the night of February 17, 2004, Mr. Moffitt was riding his new motorcycle on North Lopez, a residential street in the Faubourg St. John neighborhood of New Orleans. Unknown to him at that time, one month earlier a NOS & WB crew had torn out a section of the paved street in order to correct a|3subsurface drainage or water line problem. Upon completing the subsurface repair later in the day, the crew backfilled the hole with sand and rocks to level the 4-foot by 12-foot area with the pavement. According to the un-contradicted neighborhood witnesses, the crew did not place any barriers or warning cones in the area until after Mr. Moffitt’s injury.
 

 Between the time of the backfilling and the date of the accident, as expected, vehicular traffic and weather conditions obviously eroded the temporary filling. The neighbors testified that cars were “bottoming out” in the depression which formed in the roadway. One neighbor observed that the depth of the temporary fill from the pavement’s edge was about one foot. But no one from the NOS & WB checked on the site’s condition. The contractor for the NOS & WB did not pave the area of the repair until March 9, 2004. At that time, the neighbors reported, warning barrels were placed in the street.
 

 The motorcycle fell entirely into the dirt-and-shell backfilled depression, and as Mr. Moffitt tried to drive his cycle up and
 
 *339
 
 out, the cycle turned and Mr. Moffitt was thrown off it, his body striking a car and sustaining several wounds. He was traveling not more than 25 mph at the time. As a result of his injuries he received medical treatment, and he lost earnings from his self-employment.
 

 The trial court found that the NOS & WB was solely liable for Mr. Moffitt’s damages. On appeal, the NOS & WB assigned six errors, which we will explain in detail, but we will group the assigned errors. The errors related to the liability of the NOS & WB we will address in Part II. The errors related to the fault of Mr. |4Moffitt we will address in Part III. The error related to the award of damages we will address in Part IV.
 

 At the outset, however, we note the standard of review in this matter. A court of appeal may not set aside a trial court’s finding of fact unless it is manifestly erroneous or clearly wrong.
 
 Rabalais v. Nash,
 
 06-0999, p. 4 (La.3/9/07), 952 So.2d 653, 657;
 
 Rosell v. ESCO,
 
 549 So.2d 840, 844 (La.1989);
 
 Stobart v. State Dept. of Transportation and Development,
 
 617 So.2d 880, 882 (La.1993). As expressed by the Louisiana Supreme Court in
 
 Mart v. Hill,
 
 505 So.2d 1120, 1127 (La.1987):
 

 To reverse the fact-finder’s determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and that the record establishes that the finding is clearly wrong.
 

 More to the point for this case, the Supreme Court in
 
 Stobart
 
 held that
 

 The trial court’s findings that a defect existed in the roadway and that the defendant had actual or constructive notice of the defect are factual findings which should not be reversed on appeal absent manifest error.
 

 Stobart, supra,
 
 at 882. “The issue to be resolved is not whether the trier of fact was right or wrong, but whether the fact-finder’s conclusion was a reasonable one.”
 
 Id.
 

 II
 

 In this part we address the first three assignments by the NOS & WB, which all relate to the trial court’s finding that the NOS & WB alone was liable. In its first assignment, the NOS & WB challenges the trial court’s finding that Mr. Moffitt proved that it had sufficient notice of the defect in the roadway. In its second assignment, it argues that the evidence produced by Mr. Moffitt did not meet or | ^satisfy the statutory and jurisprudential requirements, especially those set out in La. R.S. 9:2800. And in its third assignment, the NOS & WB contends that the trial court erred in finding a causal relationship between anything for which it is responsible and the thing which Mr. Mof-fitt claims was defective. We disagree.
 

 The sources of liability occasioned by someone’s fault are found in the Civil Code. “Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.” La. Civil Code art. 2315 A. “Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill.” La. Civil Code art. 2316. “We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the acts of persons for whom we are answerable, or of the things which we have in our custody.” La. Civil Code art. 2317.
 

 Article 2317 is qualified generally by Article 2317.1, which provides:
 

 The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing
 
 *340
 
 that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.
 

 Article 2317 is also qualified particularly as to public entities such as the NOS & WB by La. R.S. 9:2800, which provides in pertinent part:
 

 A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
 

 B. Where other constructions are placed upon state property by someone other than the state, and the right to keep the improvements on the property has expired, the state shall not be responsible for any damages caused thereby unless the state affirmatively takes control of and utilizes the improvement for the state’s benefit and use.
 

 C. Except as provided for in Subsections A and B of this Section, no person shall have a cause of action based | (¡solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody
 
 unless the public entity had actual or constructive notice
 
 of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so. (emphasis added)
 

 D.
 
 Constructive notice shall mean the existence of facts which infer actual knowledge. ...
 

 G. (1) Public entity means ... sewerage and water boards and their employees, servants, agents, or subcontractors. (2) “Public site or area” means any publicly owned or common thing, or any privately owned property over which the public’s access is not prohibited, limited, or restricted in some manner including those areas of unrestricted access such as streets .... (emphasis added)
 

 The traditional notions of strict liability imbedded in decisions such as
 
 Loescher v. Pan",
 
 324 So.2d 441 (La.1975), are nearly entirely abrogated by the Lawmaker’s amendments to the Civil Code which resulted in the current versions of the articles cited as well as to La. R.S. 9:2800.
 
 See
 
 Frank L. Maraist & Thomas C. Galli-gan, LOUISIANA TORT LAW § 14.2, at 330-32 (1996), in which the commentators observe that by requiring actual knowledge or constructive knowledge pursuant to La. Civil Code art. 2317.1, the legislature effectively eliminated strict liability under Article 2317, turning it into a negligence claim. We ourselves observed recently that “[b]ecause of the limitations set forth in R.S. 9:2800, the duty owed by the Port [i.e., a public entity such as NOS & WB in the instant case] under either strict liability or negligence theories is the same.”
 
 Cronin v. Department of Public Safety and Corrections, Office of Motor Vehicles,
 
 09-0256, p. 9 (La.App. 4 Cir. 8/26/09), 19 So.3d 45, 51.
 
 See also
 
 Linda McKinnis,
 
 Limiting Strict Liability of Governmental Defendants: The Notice Requirement of the 1985 Legislation,
 
 46 La. L.Rev. 1197,1200 (1986).
 

 |7The conflation of the code articles has resulted in a current definition of liability theory in our jurisprudence. The Louisiana Supreme Court defined liability of and notice to a public entity in
 
 Jones v. Hawkins,
 
 98-1259, pp. 3-4 (La.3/19/99), 731 So.2d 216, 218:
 

 Traditionally, when pursuing a claim for damages due to road defects, Louisiana plaintiffs could proceed under theories of negligence and strict liability. These theories have historically been distin
 
 *341
 
 guished on the basis that negligence required a finding of notice, while under strict liability there was no requirement of showing that the defendant knew or should have known of the defect, [citation omitted]. This distinction was eliminated by La. R.S. 9:2800, which requires proof of either actual or constructive notice of a defect before a public entity may be held liable for damages caused by the defect. The requirements are thus now the same for proving either theory.
 

 See also Dupree v. City of New Orleans,
 
 99-3651, p. 5 (La.8/31/00), 765 So.2d 1002,-1008;
 
 Craft v. Sewerage and Water Board of New Orleans,
 
 03-1886, p. 5 (La.App. 4 Cir. 4/28/04), 874 So.2d 908, 912;
 
 Engles v. City of New Orleans,
 
 03-0692, pp. 5-11 (La.App. 4 Cir. 2/25/04), 872 So.2d 1166, 1172-76;
 
 Anderson v. Tenneco Oil Co.,
 
 01-0295, p. 10 (La.App. 4 Cir. 5/22/02), 826 So.2d 1143, 1152.
 

 Therefore, we review the record in this case guided by decisions which inform the criteria for Mr. Moffitt’s burden of proof enunciated in
 
 Jones.
 
 We give special attention to the notice requirements for NOS & WB, a public entity.
 

 We look first to our decision regarding notice or knowledge of the defect and the opportunity to remedy it, especially pertaining to public-entity defendants as in
 
 Toledano v. Sewerage & Water Board,
 
 95-1130 (La.App. 4 Cir. 3/14/96), |R671 So.2d 973,
 
 975
 

 [1]
 

 ,
 
 a case in which plaintiffs car fell into a large hole excavated by the NOS & WB, which had placed barricades at the site but then removed them before resurfacing was performed. We held:
 

 Because the S & WB recently created the defect by its own substandard conduct, it is presumed to have knowledge.... S
 
 &
 
 WB is responsible for construction, control, maintenance and operation of public water, sewerage and draining systems under La. R.S. 33:4701. It is the duty of one doing construction work to properly label, mark or barricade places in the construction site that present an unreasonable risk of harm to those in the area.... Four days thereafter, plaintiffs accident' occurred. Because S & WB is presumed to have knowledge because it recently created the excavation, and it did not provide adequate warning, S & WB is negligent and liable for the defect that presented an unreasonable risk of harm and caused the injuries to the plaintiff.
 
 Id.
 
 at 975-76.
 

 Williams v. Cooper,
 
 05-0654. p. 5 (La. App. 4 Cir. 1/25/06), 926 So.2d 571, is a case in which the plaintiff failed to prove that the city traffic light malfunction, rather than driver error, caused his injury. There we explained at length the blending and parameters of R.S. 9:2800 as it functions with claims brought pursuant to either Article 2315 or Article 2317:
 

 When the claim against a public entity is based on the condition of property, a plaintiff may proceed under theories of negligence or strict liability. Louisiana Revised Statute 9:2800 governs strict liability claims against a public entity under La. C.C. art. 2317, but limits that liability by requiring proof that the public entity had actual or constructive knowledge of the defect, yet failed to do so. [citation omitted]. The imposition of liability under general negligence principles requires proof that the defendant had actual or constructive knowledge of the risks and failed to take corrective
 
 *342
 
 action within a reasonable time, [citation omitted]. Therefore, under either negligence or strict liability, for a plaintiff to succeed in an action against a public entity based on the [ condition of property for which it allegedly had responsibility, the plaintiff must show that (1) the property causing the damage was in the custody of the public entity; (2) the property was defective due to a condition that created an unreasonable risk of harm; (3) the public entity had actual or constructive knowledge of the risk; and (4) the defect was a cause-in-fact of the plaintiffs injury.
 
 Toston v. Pardon,
 
 2003-1747 (La.4/23/04), 874 So.2d 791, 798.
 

 Williams, supra,
 
 05-0654 at p. 5, 926 So.2d at 574.
 
 See also Clarkston v. Louisiana Farm Bureau Casualty Ins. Co.,
 
 07-0158, p. 21 (La.App. 4 Cir. 7/2/08), 989 So.2d 164, 180.
 

 In
 
 Lenoir v. Sewerage and Water Board of New Orleans,
 
 535 So.2d 490, 493 (La. App. 4th Cir.1988), the plaintiff sued the NOS & WB when she fell in a hole dug by the NOS & WB during the course of its excavation near a clean-out in repairing its lines. There we held the NOS & WB was negligent because the “condition of the sidewalk was consistent with work recently undertaken by S & WB.”
 

 Our holding in
 
 Woods v. City of New Orleans,
 
 03-1776, p. 6 (La.App. 4 Cir. 3/31/04), 871 So.2d 1222, 1226, epitomizes the precept that when an entity such as the NOS & WB performs work, that performance
 
 ipso facto
 
 constitutes notice. In
 
 Woods
 
 a passenger exiting an RTA bus tripped over the remains of a cut-off bus-stop sign owned by RTA. We held, “RTA retained garde over the pole stub” and “retained a duty to remediate the site of the old pole and sign such that the site did not create an unreasonable risk of harm for tripping to a person walking in the area either during the day or night.”
 
 [2]
 

 While the NOS & WB relies on
 
 Kammerer v. Sewerage and Water Board of New Orleans,
 
 93-1232 (La.App. 4 Cir. 3/15/94),633 So.2d 1357, to argue that it | Indid not receive sufficient notice, we find it does not apply. In
 
 Kammerer,
 
 evidence showed that the Board had no notice of the damage to a manhole cover on a city street, and, unlike in our case, no current repair project was underway.
 

 So far as the evidentiary record is concerned, the NOS & WB exercised exclusively “a right of direction and control” over the undertaking and over the area.
 
 See Quinn v. RISO Investments,
 
 03-0903, p. 7 (La.App. 4 Cir. 3/3/04), 869 So.2d 922, 928.
 

 Isaiah Cameron, an employee of the NOS & WB, testified that the repair department of the agency kept barricades and barrels in its supplies, but it had no record of placement of any warning device at the North Lopez Street site between the time of the repair and Mr. Moffitt’s accident. The NOS & WB failed to warn the public, including Mr. Moffitt, of the dangerous site.
 

 The trial court found that the NOS & WB breached a duty to Mr. Moffitt, whether it was liable under Article 2315 for the negligence of its employees, or under Article 2317 for the defective condition.
 

 The trial court found that NOS & WB had garde of the repair site because it “created the depression in the street,” hence it had “custody and actual knowl
 
 *343
 
 edge”; it “created a defect and allowed it to remain for almost two months. Further it was a risk of harm to the public and [the NOS & WB] failed to take affirmative steps to warn of the street repair placing a warning device.” The trial court found that the NOS & WB had ample notice and opportunity to correct the hazardous condition of the unbarricaded sinkhole it created.
 

 We conclude that the trial judge’s fact finding was reasonable and not clearly wrong. By performing its own repairs, the NOS & WB had the requisite | unotice of the dangerousness of the condition of the roadway. We therefore conclude that NOS
 
 &
 
 WB is liable to Mr. Moffitt.
 

 Ill
 

 In this part we address the fourth and fifth assignments by the NOS & WB, both of which relate to the trial court’s finding that Mr. Moffitt was not at fault for his injuries. In its fourth assignment, the NOS & WB argues that Mr. Moffitt alone was the party responsible for his injuries because his physical condition counseled against riding motorcycles and because he violated positive law in failing to wear a helmet and in failing to have a motorcycle certification on his driver’s license. In its fifth assignment, the NOS & WB argues that, assuming arguendo that Mr. Moffitt was not solely responsible for his own injuries, the trial court erred in not assigning some percentage of fault to him. We disagree.
 

 In Part II we already concluded that the NOS & WB was liable to Mr. Moffitt, so we need not discuss whether Mr. Moffitt was solely at fault for his injuries. We limit our discussion, then, to whether the trial court was clearly wrong in not finding some degree of fault on Mr. Moffitt’s part. La. Civil Code art. 2323 in pertinent part, provides the rule for reducing an injured party’s damages on account of his or her own fault:
 

 A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person’s insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person’s identity is not known or reasonably ascertainable.
 
 If a person suffers injury, death, or loss as the result partly of his ovm negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of\^negligence attributable to the person suffering the injury, death, or loss.
 

 B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability, (emphasis added)
 

 The party raising the defense, here the NOS & WB, bears the burden of proving victim fault or contributory negligence.
 
 See Rosevally v. T.L. James & Co.,
 
 411 So.2d 1178, 1180 (La.App. 4th Cir.1982); see also La. C.C.P. art. 1005 and La. C.E. art. 302(1).
 

 Mr. Moffitt, who was sixty years old at the time, considered himself safety-conscious. He had taught motorcycle safety courses prior to this accident — his first in over sixteen years of riding motorcycles. He considered himself physically capable of operating a motorcycle. The NOS & WB points out that Mr. Moffitt, a wounded veteran of the Vietnam War, at the time of the accident suffered the following addi
 
 *344
 
 tional physical ailments or conditions: atrial fibrillation, congestive heart failure, arthritis in both knees, and hypertension; he was taking unspecified medications. After the accident, he had cataract surgery. Yet while the NOS & WB argues that Mr. Moffitt’s health prior to the accident was so impaired that he should not have been riding a motorcycle, it did not produce any evidence from a physician, or for that matter any person, that any prior medical condition or infirmity of Mr. Moffitt restricted or should have restricted him from operating his motorcycle or that any or all of these physical ailments caused or contributed to the accident. The trial court evaluated the medical testimony of Dr. Laxman Kewalramani, as well as medical records and invoices for medical care provided to Mr. Moffit after the accident, and did not find that his physical condition was a factor contributing to the cause of the accident. Considering the NOS & WB’s | |Sburden of proof, the trial court was not clearly wrong on this point. There is nothing to support the argument that any physical impairment or disability of Mr. Moffitt was a factor contributing to the accident.
 

 The NOS & WB also argues that Mr. Moffitt violated La. R.S. 32:408 C, by driving a motorcycle without an appropriate endorsement on his driver’s license. The statute provides:
 

 C. Motorcycles, motor driven cycles, and motorized bicycles shall not be given a separate class, as such, but their use shall be provided for by making an endorsement on one of the basic classes outlined in this Section. Such an endorsement shall be made only after the applicant has taken and successfully passed tests specifically designed for the operation of such vehicles. No operator’s skill test shall be required if an applicant has successfully completed the Motorcycle Safety, Awareness, and Operator Training Program provided in R.S. 17:282.
 

 While violation of a statute, or ordinance, may be negligence
 
 per se,
 
 “to be actionable the negligence must also be a legal cause of the accident.”
 
 Miller v. Keal,
 
 29,564 (La.App. 2 Cir. 5/7/97), 694 So.2d 569, 572 (citing
 
 Baughman v. State through DOTD,
 
 28,369 (La.App. 2 Cir. 5/8/96), 674 So.2d 1063). The court in
 
 Jones v. Lawrence,
 
 41,486 (La.App. 2 Cir. 9/20/06), 940 So.2d 34, 39, stated:
 

 For a violation of a statute to be actionable under negligence per se, the conduct must be both the cause in fact and the legal cause of the injury, [citation omitted].... Legal cause requires that the alleged negligent act have a substantial relationship to the harm incurred.
 

 See also Hood v. Sartor,
 
 38,874 (La.App. 2 Cir. 9/22/04), 882 So.2d 700, 704. We cannot agree with the NOS & WB that the violation of this statute, especially in the case of an experienced motorcycle rider without any history of inability to properly operate a motorcycle, could be a cause in fact and a legal cause of
 
 this
 
 accident.
 

 | ^The NOS & WB finally argues that Mr. Moffitt was at fault for not wearing a helmet. Mr. Moffitt admits that he was not wearing a helmet. We are aware that some of his injuries were to and around his head, including a scalp laceration and cervical injuries. We are also aware of one case in which an intermediate appellate court on
 
 de novo
 
 review assigned contributory fault to the operator of a motorcycle for not wearing a helmet in a parking lot the motorcyclist actually knew was riddled with potholes.
 
 See Landry v. Doe,
 
 597 So.2d 14, 19-20 (La.App. 1 Cir.1992). The first circuit found that the cyclist’s failure to wear the safety helmet contributed to his head injuries. Importantly, at that
 
 *345
 
 time, there was a statute which required the wearing of a helmet and the court expressly relied upon the violation of the statute in order to impose liability.
 

 That statute, La. R.S. 32:190 A,
 
 at the time of Mr. Moffitt’s injuries,
 
 read as follows:
 

 No person
 
 under the age of eighteen years
 
 shall operate or ride upon any motorcycle ... unless the person is equipped with and is wearing on the head a safety helmet .... (emphasis added)
 

 Clearly this statute did not impose a duty on Mr. Moffitt, a sixty-year-old cyclist, to wear a helmet.
 

 The investigating officer of New Orleans Police Department did not cite Mr. Moffitt for not wearing a helmet.
 
 [3]
 
 We mention this in light of the NOS & WB’s contention that a municipal ordinance required wearing a helmet. While we are aware that there was at one time such an ordinance which would have been Inapplicable,'
 
 [4]
 
 the NOS & WB did not convince the trial court, or preserve for our review, that the municipal ordinance was still in effect, or, if it was, that it was enforced. See La. C.E. art. 202 A and B(l)(c). But, more importantly, it failed to prove by a preponderance of the evidence that
 
 Mr. Moffitt’s
 
 failure to wear a helmet at that time constituted victim fault. Not one witness, and certainly no medical expert, testified that the failure to wear a helmet causally contributed to the accident. Under these circumstances, we are unable to say that the trial judge’s conclusion that there was no victim fault was unreasonable. We, therefore, conclude that the NOS & WB is not entitled to a reduction of the damage award under La. C.C. art. 2323 A.
 

 IV
 

 In this part we address the sixth assignment by the NOS & WB, which relates to the trial court’s finding, and consequent damages award, that Mr. Moffitt’s ankle injuries were caused by this accident and that the trial court erred in including that item in its general damages award. It further argues that factors other than his physical injuries affected the downturn in his business; included in those factors was the storm in 2005. The NOS & WB contends that these inflated the special damages award. We disagree.
 

 “In the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury.” La. Civil Code art. 2324.1.
 

 As to general damages,
 
 Youn v. Maritime Overseas Corp.,
 
 623 So.2d 1257, 1260-61 (La.1993), instructs us that:
 

 | iJTjhe role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circum
 
 *346
 
 stances particular to the case under consideration .... It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
 

 See also Moody v. Cummings,
 
 09-1233, p. 4 (La.App. 4 Cir. 4/14/10), 37 So.3d 1054, 1059;
 
 Dixon v. Travelers Ins. Co.,
 
 02-1365, pp. 9-10 (La.App. 4 Cir. 4/2/03), 842 So.2d 478, 485.
 

 The NOS & WB argues that Mr. Moffitt’s ankle injury should not be attributed to the accident. We find no error in the district court’s finding that the medical evidence showed that Mr. Moffitt’s injuries, including those to his ankle, were causally related to the accident. Medical evidence, the total expense of which was $32,825.55, consisted of the testimony of Dr. Kewalramani and invoices and records from health care providers Memorial Medical Center, Dr. Claude Williams-Southern Orthopaedic, Dr. Laxman Kewalramani-La. Physical Medicine and Rehab Associates, Clearview Medical Imaging, Dr. Morteza Shamsnia-Advanced Neurodiag-nostic, and prescription medication receipts. Emergency room and subsequent medical histories and examinations show that Mr. Moffitt sustained a scalp laceration requiring seven sutures, and a concussion with post-concussion syndrome manifested by blurring of vision in his right eye, difficulty focusing, and hearing a buzzing sound in his right ear. A CT scan revealed chest trauma-caused pulmonary contusion, fractures to the left third rib and one of the mid-thoracic ribs, and pleural effusion. He sustained a fractured left clavicle with acromioclavicular [17joint separation, as well as external abrasions in the left shoulder area. He was required to wear a strap to restrict movement of the left shoulder and arm. He suffered pain and swelling in both legs and feet. His shoulder injury caused pain, tingling, some numbness in his upper extremity, and limited his motion; his sleep was impaired by pain and inability to lie comfortably. Dr. Claude Williams’ operative report in evidence described a fractured right ankle with “persistent pain over the past two months,” since the accident, requiring open reduction surgery and fixation with plates and screws. Mr. Moffitt suffered aggravation of chronic cervical muscular ligamentous pain syndrome, cervical disc dysfunction at C5-6 and 6-7, with facet arthropathy. Dr. Kewalramani assigned a 15 percent partial permanent total body disability.
 

 The medical testimony by Mr. Moffitt’s treating physician was undisputed.
 
 See Smith v. Highlands Ins. Co.,
 
 222 So.2d 540 (La.App. 4 th Cir.1969). The NOS & WB did not present any contradictory medical examination or expert opinion regarding Mr. Moffitt’s physical condition either before or after his accident.
 
 See
 
 La. C.C.P. arts. 1464, 1465.1, 1469.1.
 

 We find that, first, the trial court was not clearly wrong in finding the ankle was injured in Mr. Moffitt’s accident, and, second, that it did not abuse its
 
 vast
 
 discretion in its general damages award.
 
 See Cone v. National Emergency Serv., Inc.,
 
 99-0934 (La.10/29/99), 747 So.2d 1085, 1089;
 
 Youn, supra,
 
 623 So.2d at 1261.
 

 With respect to the special damages award, which includes compensation for the reduction in income of Mr. Moffitt, who was self-employed, we apply a different test.
 
 Kaiser v. Hardin,
 
 06-2092, pp. 11-12 (La.4/11/07), 953 So.2d 802, 810, states:
 

 | ^Special damages are those which have a “ready market value,” such that the amount of the damages theoretically
 
 *347
 
 may be determined with relative certainty, including medical expenses and lost wages.
 
 McGee v. A C and S, Inc.,
 
 05-1036 (La.7/10/06), 933 So.2d 770. In reviewing a jury’s factual conclusions with regard to special damages, an appellate court must satisfy a two-step process based on the record as a whole: There must be no reasonable factual basis for the trial court’s conclusions, and the finding must be clearly wrong.
 
 Guillory v. Ins. Co. of North America,
 
 96-1084 (La.4/8/97), 692 So.2d 1029.
 

 The trial court was able to consider what Mr. Moffitt might have been able to earn but for his injuries and what he may now earn in his resulting condition. A claim for the loss of earnings need be proven not with mathematical certainty but with such proof as reasonably establishes the plaintiffs claim.
 
 See Ryan v. Zurich American Ins. Co.,
 
 07-2312, p. 8 (La.7/1/08), 988 So.2d 214, 219 (and cases cited therein). Both Mr. Moffitt and his son Jeff Moffitt, also a jeweler, testified regarding the physical duties and the earnings from the business of jewelry-making and preparation of oils from which Mr. Moffitt earned his living before his accident, and they described the decline of that business. They presented uncontro-verted testimony showing that his injuries and immobility caused Mr. Moffitt’s pain and impaired his ability to do the work of his occupation as well as curtailing other activities, including his longtime avocation of animal rescue. The NOS & WB presented no witnesses to dispute the two men’s testimony, particularly the descriptions of the significant use of neck, shoulders, arms, and hands for the manufacturing jeweler as he works.
 

 We are satisfied that the trial judge took all the evidence and testimony into account in awarding an amount of money to compensate Mr. Moffitt for his special damages for his loss of earnings and reduced earning capacity. We find no |19manifest error in the trial judge’s finding that Mr. Moffitt’s injuries caused his loss of business subsequent to his accident.
 

 After our review of the record, we find that the special damages award is reasonable and that the trial court did not abuse its discretion in its award.
 

 DECREE
 

 Accordingly, we affirm the judgment of the trial court in favor of Richard Moffitt and against the New Orleans Sewerage & Water Board, which is taxed with all costs.
 
 See
 
 La. C.C.P. art. 2164.
 

 AFFIRMED.
 

 [1]
 

 .
 
 See also Whatley v. City of
 
 Winnfield, 35, 132 (La.App. 2 Cir. 12/5/01), 802 So.2d 983, 986 ("When the municipality creates the defective condition by its own substandard conduct, it is presumed to have knowledge of the hazardous condition.’’)
 

 [2]
 

 .
 
 Woods
 
 additionally relies on the second criterion of the
 
 Jones
 
 and
 
 Quinn
 
 cases, the "unreasonable risk of harm.”
 

 [3]
 

 . The report showed that Mr. Moffitt had automobile insurance, and he had a Florida driver’s license. The record does not indicate whether Florida law required a motorcycle endorsement for its driver's license. However, Section 316.211, "Equipment for motorcycle and moped riders" of Florida Statutes Annotated Title XXIII, effective July 1, 2000, provides in (b): "Notwithstanding subsection (1), a person over 21 years of age may operate ... a motorcycle without wearing protective headgear .... if such person is covered by an insurance policy providing for at least $10,000 in medical benefits for injuries incurred as a result of a crash while operating ... a motorcycle.”
 

 [4]
 

 .
 
 See State v. Morgan,
 
 445 So.2d 50, 52-53 (La.App. 4th Cir. 1984);
 
 Everhardt v. City of New Orleans,
 
 253 La. 285, 217 So.2d 400, 404 (1968).