882 So.2d 700 (2004)
Randy HOOD, Plaintiff-Appellant
v.
Emmett A. SARTOR, Progressive Security Insurance, Fred L. Hines and Ohio Casualty Insurance, Defendants-Appellees.
No. 38,874-CA.
Court of Appeal of Louisiana, Second Circuit.
September 22, 2004.
*701 Law Office of Ronald J. Miciotto by Gary Bowers, Ronald J. Miciotto, Shreveport, for Appellant.
Cook, Yancey, King & Galloway by Kenneth Mascagni, Shreveport, for Appellees, Emmett A. Sartor and Progressive Security Insurance Company.
Taylor, Porter, Brooks & Phillips, L.L.P. by Margaret L. Tooke, Baton Rouge, for Appellees, Fred L. Hines and West American Insurance Co., and Reggie Roe Builders, Inc.
Before PEATROSS, MOORE & LOLLEY, JJ.
PEATROSS, J.
This negligence action arises out of a car accident that occurred between Plaintiff Randy Hood ("Mr. Hood"), Defendant Fred Hines ("Mr. Hines") and Defendant Emmett Sartor ("Mr. Sartor") in November 1999. The trial court granted summary judgment in favor of Mr. Hines, his insurer, West American Insurance Company ("West"), and Reggie Roe Builders, Inc. ("Reggie Roe"),[1] his employer, finding no negligence on the part of Hines in causing this accident. Pursuant to that ruling, the trial court entered an amended judgment dismissing Mr. Hines, West, and Reggie Roe. Mr. Hood appeals and Defendants Mr. Sartor and his insurer, Progressive Security Insurance ("Progressive") (all appellants referred to collectively herein as "Mr. Hood"), have adopted his brief in this appeal. For the reasons stated herein, we affirm.

FACTS
On November 15, 1999, a three-car accident occurred on Stonewall/Frierson Road in Desoto Parish, north of Mansfield, Louisiana. The precise time of the accident was not established with certainty; however, the evidence indicates that it occurred at or around 5:24 p.m. or 5:25 p.m. According to the U.S. Naval Observatory Records ("Naval Records") introduced by Mr. Hood at the hearing on the motion for summary judgment, sunset occurred at 5:15 p.m. that day. The same Naval Records define and distinguish between sunset, civil twilight and darkness. In the case sub judice, the record indicates that the accident occurred during civil twilight, which is the period between sunset and complete darkness, when regular outdoor activities may be conducted without the necessity of artificial illumination.
The accident at issue occurred when Mr. Sartor, age 82, was traveling west and made a left turn into the path of the oncoming vehicle driven by Mr. Hines, who was traveling east on the same road, at the same time. In an attempt to avoid a collision, Mr. Hines slammed on his brakes, causing his wheels to lock, ultimately resulting in a collision with the Sartor vehicle and the vehicle being driven by Mr. Hood, who was also traveling west immediately behind Mr. Sartor.
Both Mr. Hood and Mr. Sartor claim that some fault rests with Mr. Hines based on the fact that Mr. Hines' headlights were *702 not illuminated at the time of the accident. They claim that the failure of Mr. Hines to energize his headlights resulted in reduced visibility of his car, thus constituting some degree of fault on his part. By way of contrast, Mr. Hines claims that it was Mr. Sartor's preoccupation with the Hood vehicle behind him and his failure to look before turning that was the cause of this accident. As mentioned, the record indicates that sunset had occurred minutes before the accident; however, all testimony and evidence suggests that the light was good at the time of the accident. By Mr. Hood's own admission, he could see the car in front of him (Mr. Sartor's yellow Volvo) from "hundreds of yards back." Mr. Hood testified that the reason he did not see Mr. Hines' vehicle had nothing to do with the latter's unlit headlights, but, rather, was because his view of oncoming traffic was obstructed by the knoll of a hill in front of him.
The trial court granted summary judgment in favor of Mr. Hines, West and Reggie Roe finding "no negligence on the part of Hines in causing this accident." The trial court went on to state that Mr. Sartor's testimony that he never saw the Hines vehicle until the moment they collided precluded Mr. Sartor from being free of negligence. The court stated that Mr. Sartor had the burden of proving that the failure of Mr. Hines to illuminate his headlights contributed to this accident and that he failed to do so. Pursuant to that ruling, as previously mentioned, the trial court entered an amended judgment dismissing West, Reggie Roe and Mr. Hines. This appeal ensued.

DISCUSSION
The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action and the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. 966(B). The burden of proof remains with the movant; however, if the movant will not bear the burden of proof at trial on the matter before the court on the motion for summary judgment, then the movant may merely point out to the court that there is an absence of factual support for one or more elements essential to the plaintiff's claim. The burden then shifts to the non-moving party to present evidence demonstrating that genuine issues of material fact remain. La. C.C.P. art. 966 C(2); Racine v. Moon's Towing, 01-2837 (La.5/14/02), 817 So.2d 21. Once the burden has shifted, the opponent must produce factual support to avert the summary judgment. If the opponent fails to produce such evidence, summary judgment is mandated. La. C.C.P. art. 966 C(2); Racine, supra. Appellate review of the grant or denial of summary judgment is de novo. Ross v. Conoco, Inc., 02-0299 (La.10/15/02), 828 So.2d 546.
Mr. Hines' motion for summary judgment alleged, and he asserts on appeal, that none of the material facts in this case are in dispute. He asserts that (1) the lighting conditions were adequate; (2) Mr. Sartor could have and should have seen the approaching vehicle driven by Mr. Hines, but did not because he was preoccupied with the vehicle behind him (driven by Mr. Hood); and (3) he, Mr. Sartor, made a sudden left turn, invoking the sudden *703 emergency doctrine[2], which Mr. Hines had no duty to anticipate and, accordingly, for which he had no liability. Conversely, Mr. Hood asserts that, had Mr. Hines energized his headlights, this accident would not have occurred, thus giving rise to a material issue of genuine fact surrounding the latter's negligence.
The primary issue in this appeal, therefore, centers around the lighting conditions on the Stonewall/Frierson road at the time and date of the accident as they relate to La. R.S. 32:301, which requires a person to energize his or her headlights at any time between sunset and sunrise.[3] There is no dispute that sunset on November 15, 1999, occurred at 5:15 p.m., approximately ten minutes prior to the accident. Further, all evidence and testimony suggests that the accident occurred sometime between 5:24 to 5:26 p.m.
Mr. Hines argues that there is no genuine issue of material fact surrounding the lighting conditions at the time, as all persons involved agree that it was light enough to see clearly. After our de novo review of the evidence in this case, we agree. At the hearing on the motion for summary judgment, Mr. Hood introduced the Naval Records showing the time of sunset on November 15, 1999. The same Naval Records define and distinguish between sunset, civil twilight and darkness. Mr. Hood also introduced statistics taken at the same location by non-witness lay people some three years after the date of the accident. The Naval Records produced by Mr. Hood describe civil twilight as the period of time after sunset when there is enough light in the upper atmosphere that "outdoor activities may be conducted without artificial illumination." Complete darkness does not occur until after the end of civil twilight. According to the Naval Records, civil twilight did not end, and therefore, complete darkness did not begin in Mansfield, Louisiana, on November 15, 1999, until 5:41 p.m., some 25 minutes after the accident.
Trooper Christopher Shaw ("Trooper Shaw"), the officer who reported to the scene of the accident, testified in his deposition that he wrote no citations for failure to use headlights because he did not realize that the accident occurred after "official" sunset. This indicates that Trooper *704 Shaw either believed that sunset had not yet occurred or that the lighting conditions were such that no citations were warranted, i.e., there was adequate lighting. Trooper Shaw further testified in his deposition that he returned to the scene of the accident the following day, at the same time of day, and had little trouble identifying approaching automobiles without their lights illuminated.
In addition, Mr. Sartor testified that it was only "dusk" and "getting dark." Further, Bill Richardson ("Mr. Richardson"), Mr. Sartor's nephew-in-law, who witnessed the accident, stated in his deposition that:
... it was after sunset, but not dark, and [Sartor] was not looking forward [at the road ahead]. They got closer and closer and Mr. Sartor continued to watch the man [Hood] behind him because he was right on his bumper by then.
Mr. Richardson went on to state that "[t]he car behind [Sartor] was occupying his entire attention." (Emphasis added.) When asked if he, Mr. Richardson, could see Mr. Hines' car despite its unilluminated lights, he stated that he could. Finally, Mr. Hood admitted in his deposition testimony that "[t]he light was good. I could see that yellow Volvo [Mr. Sartor's car] from hundreds of yards back. The light was good." He further testified that the reason he did not see Mr. Hines' vehicle had nothing to do with the latter's unlit headlights, but, rather, stated in his deposition that "[i]t was a knoll of a hill so I couldn't see oncoming traffic."
Despite this admission, Mr. Hood argues that the lighting was such that Mr. Hines' failure to use his headlights at this time of day (or night) constituted negligence, thus creating a genuine issue of material fact. In support of this argument, Mr. Hood relies on Calk v. Grain Dealers Mut. Ins. Co., 508 So.2d 624 (La.App. 2d Cir.1987), and Bradley v. Tripkovich, 415 So.2d 999 (La.App. 4th Cir.1982), for the proposition that "[t]he duty of the driver to display headlights when conditions require them is imposed not only to enable him to see others in his path, but also to enable others to see his vehicle." Mr. Hood also cites La. C.C. art. 2315, noting that, under Louisiana law, the failure to exercise reasonable care under the circumstances constitutes negligence. Mr. Hood's reliance on Calk and Bradley, supra, is misplaced. Both cases involve vehicles being driven after dark (not during civil twilight), without headlights on, and neither involved a left-turning driver who failed to yield right-of-way. Further, both cases stand for the proposition that a driver should use his lights after dark so that he may be seen and no one will enter his path. In the case sub judice, all undisputed testimony evidences that the lighting conditions were such that no headlights were necessary  it was not yet completely dark outside. Again, this is supported by Mr. Hood's own evidence. Considering our discussion of the lighting conditions, supra, we conclude that the failure of Mr. Hines to energize his headlights does not constitute a "failure to exercise reasonable care under the circumstances" as a matter of law.
Assuming, arguendo, that Mr. Hines had been cited with a violation of La. R.S. 32:301 for failing to use his headlights, we further conclude that this fact alone would not give rise to actionable negligence on his part. In Miller v. Keal, 29,564 (La.App.2d Cir.5/7/97), 694 So.2d 569, writ denied, 97-1751 (La.10/13/97), 703 So.2d 620, this court stated:
[a]lthough violation of a statute or ordinance constitutes negligence per se, to be actionable the negligence must also be a legal cause of the accident. [Citations omitted]. Actionable conduct is *705 both a cause in fact of the injury and a legal cause of the harm incurred. To satisfy the cause in fact requirement, the finder of fact must determine that the injury would not have been sustained "but for" the conduct of the party allegedly negligent. To be a legal cause of the harm, there must be a "substantial relationship" between the conduct and the harm incurred. [Citations omitted.]
In summary, the record in the present case indicates that Mr. Hines was confronted with a sudden emergency situation when Mr. Sartor unexpectedly turned left in front of him. In opposing the motion for summary judgment, Mr. Hood, therefore, had the burden to present contradictory evidence that Mr. Sartor would not have made the left turn had Mr. Hines' headlights been illuminated. Instead, all that was offered in opposition to Mr. Hines' motion for summary judgment was the speculation that, had Mr. Hines' lights been illuminated, Mr. Sartor might not have made the turn and the subsequent accident would have been avoided. Mr. Sartor never stated in his deposition that it was too dark to see the Hines vehicle, nor did he make any effort to contradict Mr. Richardson's statements that he was not looking ahead when he made the left turn. In Severson v. St. Catherine of Sienna Catholic Church, 97-1026 (La.App. 5th Cir.2/11/98), 707 So.2d 1026, writ denied, 98-0653 (La.4/24/98), 717 So.2d 1178 the court ruled that summary judgment was proper in favor of an oncoming motorist when a left-turning motorist failed to present evidence of a genuine issue of material fact. In that case, the court found summary judgment proper when the undisputed facts showed that (1) the plaintiff was traveling in a favored, oncoming direction[4] and (2) the left-turning driver stated that he did not see plaintiff's car before making his turn. Those same facts are presented without dispute in the case sub judice: Mr. Hines was traveling in the oncoming, favored direction and Mr. Sartor, by his own admission, did not see him until the moment of collision. As such, summary judgment was properly granted.

CONCLUSION
For the foregoing reasons, the judgment of the trial court granting summary judgment in favor of Fred Hines, West American Insurance Company and Reggie Roe Builders, Inc. is affirmed. Costs of appeal are assessed against Randy Hood.
AFFIRMED.
NOTES
[1] Reggie Roe (Mr. Hines' employer) was inadvertently named as a movant for summary judgment by Mr. Hines' counsel. Reggie Roe has not been named as a defendant in this lawsuit. Additionally, Ohio Casualty Insurance was originally named as a defendant. The petition was subsequently amended to name West, which is a member of the Ohio Casualty Insurance Companies.
[2] In Whiddon v. Hutchinson, 94-2000 (La.App. 1st Cir.2/23/96), 668 So.2d 1368, writs denied, 96-0731 and 96-0775 (La.5/10/96), 672 So.2d 923, the first circuit found no liability on the part of an oncoming motorist who was confronted with a sudden emergency created by the unexpected left turn of a vehicle into his lane of traffic under circumstances factually similar to the case sub judice. The Whiddon Court went on to explain the sudden emergency doctrine by stating:

One who suddenly finds himself in a position of imminent peril, without sufficient time to consider and weigh all the circumstances or best means that may be adopted to avoid an impending danger, is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been the better method, unless the emergency in which he finds himself is brought about by his own negligence.
668 So.2d at 1375, citing Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385 (1972). Mr. Hines argues, inter alia, that he was the favored, oncoming driver and that he did not bring about this situation by his own negligence.
[3] La. R.S. 32:301 provides, in pertinent part:

Every vehicle upon a highway in this state shall display lighted lamps and illuminating devices ... at any of the following times:
(1) At any time between sunset and sunrise.
(2) When, due to insufficient light or unfavorable atmospheric conditions, persons and vehicles on the highway are not clearly discernable at a distance of five hundred feet ahead.
(3) When moisture in the air or precipitation necessitates the continuous use of windshield wipers.
[4] The oncoming, favored motorist in such a situation has the right to assume that a left-turning motorist will yield right-of-way. Severson, supra, citing Walker v. McCartney, 96-706 (La.App. 5th Cir.9/17/97), 700 So.2d 898. In addition, "[i]f a motorist fails to see what he should have seen, then the law charges him with having seen what he should have seen, and the court examines his subsequent conduct on the same premise that he did see what he should have seen." Severson, supra, citing Sanchez Fernandez v. General Motors Corp., 491 So.2d 633 (La.1986).