PEATROSS, J.
| defendant Safeway Insurance Company of Louisiana (“Safeway”) appeals the trial court’s findings of fact and its allocation of fault to Defendant Kevin W. Lawrence. Mr. Lawrence was driving Safeway’s insured vehicle when it collided with the vehicle in which the children of Plaintiff, Deandrea Jones, were riding. Plaintiff, individually and on behalf of her minor children, sought recovery for injuries sustained by her children in the accident. After a bench trial, the trial court allocated 100 percent of the fault to Mr. Lawrence; and, on a motion for new trial filed by Safeway, the trial court cast only Safeway in judgment. For the following reasons, the judgment of the trial court is amended and, as amended, is affirmed.
FACTS
Plaintiff, individually and on behalf of her minor children, sued for injuries sustained in an automobile accident that occurred on March 15, 2003. The accident was between a vehicle driven by Mr. Lawrence, owned by Linsey .D. Howard and insured by Safeway, and a vehicle owned and operated by Cedric L. Toney. Plaintiffs children were passengers in Mr. To-ney’s vehicle. Plaintiff settled a separate suit against Mr. Toney before trial.
The facts surrounding how the accident occurred are in dispute. According to Plaintiffs version of events, both vehicles were traveling north on Highway 15, a two-lane, undivided highway. Prior to the accident, Mr. Lawrence passed Mr. Toney on the right side shoulder. At some point later, Mr. Lawrence stopped his vehicle, straddling the center line with his Lleft turn signal on. He was stopped with a road to his left and a private drive to his right. Mr. Toney stopped behind Mr Lawrence, then attempted to pass him on the right, resulting in driving, at least partially, on the paved shoulder. As Mr. Toney was passing; Mr. Lawrence moved to the right, striking Mr. Toney’s vehicle and sending it into, a telephone pole, snapping it. The investigating state trooper, Phil Zalewski, issued Mr. Toney a ticket for careless operation, which Mr. Toney paid without contesting.
The testimony further suggests that Mr. Lawrence was intoxicated to some extent. He failed three of the six sobriety tests, but he did not receive a citation. According to the testimony of Trooper Zalewski, *36 failing four sobriety tests is the prerequisite for issuing a citation for driving while intoxicated. One witness testified that, after the accident, Mr. Lawrence moved beer from the passenger compartment into the trunk of the vehicle. Mr. Toney testified that a beer can fell out of Mr. Lawrence’s vehicle after the accident.
Safeway provided a defense in the suit and alleged that Mr. Toney was speeding, did not stop and swerved to the right only to avoid Mr. Lawrence’s vehicle which was properly turning right. Safeway was unable to locate either Mr. Lawrence or his passenger, Dustin Sharp, to testify. The trial court left the record open for new evidence for 30 days should Safeway locate either witness. The time expired without any additional evidence being introduced.
| ¡¡Plaintiff also called Trooper Zalewski. He did not independently remember many details from the accident, but read his summary in his accident report of the drivers’ statements:
Driver of vehicle # [2](sie) [Mr. Lawrence] stated that he was attempting a right turn when vehicle # 1 [Mr. Toney] came around him and struck them. Driver of vehicle # 2 stated that he had his turn signal on. Driver of vehicle # 1 stated that vehicle # 2 was at a complete stop in the middle of LA Highway 15 with no turn signal on. Driver # 1 also state (sic) that in order not to uh ... to not colliding (sic) with the rear of vehicle # 2, he attempted to go around him on the shoulder of the road.
In addition to the statement, Trooper Za-lewski testified that Mr. Toney told him he was going 40 miles per hour. The posted speed limit is 35 miles per hour. Further, Trooper Zalewski put the point of impact at the fog line, the white line separating the driving lanes from the shoulder. -Additionally, Trooper Zalewski testified that the damage to Mr. Toney’s vehicle was on the front driver’s side, while the damage to Mr. Lawrence’s vehicle was to the front passenger side. Safeway relies heavily on Trooper Zalewski’s testimony to support its version of the accident.
The trial court ultimately found for the Plaintiff and against Mr. Lawrence and Safeway. In its reasons for judgment, the trial court found that Mr. Lawrence stopped and signaled for a left turn, that Mr. Toney stopped behind Mr Lawrence and then attempted to pass on the right when the Lawrence vehicle struck or was struck by the Toney vehicle. The trial court found Mr. Lawrence’s action “to be quite bizarre” and stated that “the record is void of any evidence that would indicate why Mr. Lawrence would abruptly change the course of his vehicle.” Based on such a finding and the absence of evidence showing an alternative cause, an ^extraordinary traffic situation or emergency, the trial court concluded that Mr. Lawrence’s negligence was the sole case of the accident.
The trial judge assigned 100 percent fault to Mr. Lawrence and entered judgment against Mr. Lawrence and Safeway. In its original judgment, the trial court awarded Deandrea Jones, for and on behalf of Tomorra Jones, Renee Jones and Kadezah Jones, the amounts of $12,671.66 for Tomorra, $7,163.14 for Renee and $5,818.99 for Kadezah. The award total was $25,653.79. The limits of the Safeway policy were $10,000 per person, and $20,000 per accident. Upon Safeway’s motion for new trial, the trial judge revised the judgment casting only Safeway, as Plaintiff did not serve Mr. Lawrence. The trial court also reduced Plaintiffs award to within Safeway’s policy limits as follows: Deandrea Jones on behalf of Tomorra Jones damages of $9,800; Deandrea Jones on behalf of Renee Jones damages of $5,600; and Deandrea Jones on behalf of *37 Kadezah Jones damages of $4,600, totaling $20,000. The judgment also cast Safeway with judicial interest and costs. From this judgment, Safeway appeals.
DISCUSSION
As previously stated, Safeway appeals the trial court’s factual findings and its allocation of fault. Our review of the factual findings in this case are governed by the manifest error/clearly wrong standard of review. An appellate court may not set aside a trial court’s finding of fact unless it is manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). An allocation of fault is a factual determination subject to the | Smanifest error rule. Theriot v. Lasseigne, 93-2661 (La.7/5/94), 640 So.2d 1305; Cook v. Kendrick, 41,061 (La.App.2d Cir.5/19/06), 931 So.2d 420.
'Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Id.; Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Where two permissible views of the evidence exist, the fact finder’s choice between them cannot be manifestly wrong. Rosell, supra; Watson v. State Farm Fire & Cas. Ins. Co., 469 So.2d 967 (La.1985); Arceneaux, supra. Where the fact finder’s conclusions are based on determinations regarding credibility of the witnesses, the manifest error standard demands great deference to the trier of fact, because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Rosell, supra.
We hold that the trial court’s allocation of 100 percent fault to Mr. Lawrence and no fault to Mr. Toney was manifest error. First, our review of the record supports the trial court’s factual finding regarding the negligence of Mr. Lawrence. The record supports the trial court’s finding that Mr. Toney stopped before proceeding to pass Mr. Lawrence on the right using the shoulder. At trial, Mr. Toney and his passengers, Zargiethia Renee Jones and Tommora Jones, gave their eye witness accounts of the accident.[1]
|fiMs. Renee Jones testified that she was one of six passengers in Mr. Toney’s vehicle driving down Highway 15. She was seated behind the driver. She testified that Mr. Toney’s vehicle came up on another vehicle, Mr. Lawrence’s vehicle, as it moved across the center line, then stopped with its left turn signal on. According to Renee, Mr. Toney stopped behind Mr. Lawrence before proceeding to move to the right of Mr. Lawrence when that vehicle moved right into them.
Mr. Toney testified that, as he approached the Lawrence vehicle, it was already stopped across the center line. Mr. Toney described Mr. Lawrence. as “just standing in the road, like half, half way in my side and half way on the other side.” He further described the lead vehicle as tilted or at an angle to the left, but did not see any turn signals. Mr. Toney testified that he stopped behind the vehicle, then decided to proceed around Mr. Lawrence on the right, which included driving on the shoulder of the road at a speed of 25-30 miles an hour. As he was driving on the right, Mr. Toney testified that Mr. Lawrence came back to the right, hitting him hard and sending him into a pole and *38 breaking it. Mr. Toney admitted paying the ticket he was issued.
Tommora Jones, a passenger in Mr. To-ney’s vehicle, testified to the events of the accident. She testified that she saw Mr. Lawrence’s vehicle stopped in the middle of the street with the left signal blinking as her vehicle approached. She described Mr. Toney as stopping, then going around the other vehicle, including driving on the shoulder. She then 17testified that the other vehicle came over the right and struck Mr. Toney’s vehicle. She described the impact as a hard hit, sending Mr. Toney’s vehicle into the pole. She further testified that Mr. Toney braked before hitting the pole.
As the investigating officer of the accident, Trooper Zalewski testified to the process and findings of his investigation, though at several points he testified he could not remember. Through Trooper Zalewski, Plaintiff introduced photographs of the location of the accident taken after the cars were removed and the telephone pole replaced. The photographs and Trooper Zalewksi’s testimony established that the highway generally had a wide improved shoulder, roughly wide enough to accommodate a vehicle. Trooper Za-lewski testified that, based on his information, he determined that the point of impact was at the fog line.
Trooper Zalewski also testified as to his findings regarding the movements of the cars. His description of the accident was that vehicle # 2 (Mr. Lawrence) attempted a right turn into a private drive when vehicle # 1 (Mr. Toney) passed vehicle # 2 on the shoulder striking the front right of vehicle # 2. He also testified that Mr. To-ney told him that he was going 40 miles per hour at the time of the accident and that he had to swerve on to the shoulder to avoid rear-ending Mr. Lawrence. On redirect, Plaintiff had Trooper Zalewski read into the record the above-quoted portion of his accident report.
Safeway challenges the credibility of the witnesses on several bases. The record does not support Safeway’s credibility arguments. Further, as ^stated above, we must give great deference to the trial court on matters of credibility. Rosell, supra. We will not disturb the trial court’s credibility determinations regarding Mr. Lawrence’s negligence.
Safeway also challenges the court’s allocation of fault, arguing that, even based on undisputed facts, all liability and fault lie with Mr. Toney. Despite the reasonableness of the finding that Mr. Lawrence was at fault, we conclude that the trial court erred in not assessing some fault for this accident to Mr. Toney because of his improper passing. For the reasons set forth below, we allocate 20 percent fault to Mr. Toney and 80 percent fault to Mr. Lawrence.
The trial court found, and Plaintiff does not dispute, that Mr. Toney passed Mr. Lawrence on the right driving, at least partially, on the shoulder. Passing on the right is prohibited, with exceptions. R.S. 82:74 provides, in part:
A. The driver of a vehicle may overtake and pass upon the right of another vehicle only under the following conditions:
(1) When the vehicle overtaken is making or about to make a left turn; ...
B. The driver of a vehicle may overtake and pass another vehicle upon the right only under conditions permitting such movement in safety. In no event shall such movement be made by driving off the pavement or main traveled portion of the highway. (Emphasis added.)
Defendant argues under a theory of negligence per se that this prohibition *39 requires a finding of negligence on Mr. Toney. We agree. For a violation of a statute to be actionable under negligence per se, the conduct must be both the cause in fact and the legal cause of the injury. Hood v. Sartor, 38,874 (La.App.2d Cir.9/22/04), 882 So.2d 700. A party satisfies cause in fact if he shows that, “but for” the alleged negligent act, the injury would not have occurred. Id. Legal cause requires that the alleged negligent act have a substantial relationship to the harm incurred. Id.
Mr. Toney violated the statute by passing on the right when the move could not be completed safely and by driving off the pavement. The violation meets both the cause in fact and legal cause requirements. The accident would not have occurred “but for” Mr. Toney attempting to pass Mr. Lawrence on the shoulder. Moreover, Mr. Toney passing on the right has a substantial relationship to the accident. The violation of R.S. 32:74 was not a strained or tangential cause of the accident. Attempting to pass Mr. Lawrence on the shoulder directly and substantially resulted in this accident. The trial court was clearly wrong to find Mr. Toney to be without fault.
Given Mr. Lawrence’s “unexplained and bizarre” behavior, the trial court was not manifestly erroneous in finding Mr. Lawrence negligent. As explained above, Mr. Toney should bear his portion of fault for this accident. In re-allocating fault, this court must consider the nature of the conduct of each party at fault and the causal relationship between the conduct and the injury. Watson, supra. The factors the court considers are: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating |incircumstances which might require the actor to proceed in haste, without proper thought. Id.
In the case sub judice, Mr. Toney was inattentive and likely impatient. In contrast, Mr. Lawrence’s conduct shows a blatant disregard for the safety of others by driving erratically. The evidence further suggests he had some level of impairment from alcohol, a risk he also disregarded. Mr. Lawrence created a significant risk by indicating a left turn by his movements and then suddenly switching directions without first establishing a safe path. Mr. Toney created only a slight risk when be decided to pass on the shoulder when the shoulder was wide enough for his vehicle and he reasonably believed Mr. Lawrence’s vehicle was making a left turn. We find limited utility in Mr. Toney’s passing Mr. Lawrence for no other reason than impatience and hurry. Equally, Safeway showed no utility that Mr. Lawrence motioned for a left turn and then suddenly made a right turn. Further, both drivers had the same capacities and neither party showed any extenuating circumstances to excuse the conduct. After considering the factors, as stated. above, we allocate 20 percent of fault to Mr. Toney with the remaining 80 percent allocated to Mr. Lawrence.
Our allocation is consistent with previous cases of this nature. In McCullin v. U.S. Agencies Casualty Insurance Co., 34,661 (La.App.2d Cir.5/9/01), 786 So.2d 269, the plaintiffs vehicle drifted into the left lane of a two-lane highway with its left turn signal on. The defendant accelerated to pass her on the right when the plaintiffs vehicle came back over to the right. The defendant hit the plaintiffs vehicle in the rear. The accident |, 1 occurred in the driving lane. Both cars were going 55 miles per hour when the accident occurred. *40 This court upheld apportioning only 10 percent of fault to the plaintiff, in the lead vehicle, and 90 percent to the defendant, in the passing vehicle. In McCullin, both vehicles were still traveling at the high rate of speed making the attempted pass by the defendant much riskier. Further, the continuing speed limited the utility of the maneuver because the plaintiff was still in motion to turn and the defendant only had to wait for the lead vehicle to complete the turn. In the case sub judice, Mr. Lawrence was stopped in the midst of a left turn without explanation; Mr. Toney did not have any indication that with patience Mr. Lawrence would complete his turn and Mr. Toney could continue on his way.
Mr. Toney, however, could have exercised more patience to be completely free of fault. In Jones v. Tidwell, 139 So.2d 57 (La.App. 2d Cir.1962), an apparently left-turning vehicle suddenly moved right striking a vehicle passing on the right shoulder. This court attributed no fault to the passing vehicle. In contrast to McCul-lin, supra, the leading vehicle was stopped for several minutes before the sudden move right. More importantly, the passing vehicle had stopped for one to two minutes before attempting to pass. This court observed that:
Ordinarily, as following vehicle should not, however, attempt to pass on the right of another car, but, when that ear is standing stationary, it cannot be said that the driver of a car which must pass must wait until the driver of the stationary car sees fit to move it.
Id. The following driver, however, must still exercise great care. Nesbit v. Travelers Ins. Co., 218 So.2d 396 (La.App. 2d Cir.1969). The record is|iasilent as to how long Mr. Toney stopped before attempting the pass. Without the kind of lengthy delay of one or two minutes present in Jones, we cannot say Mr. Toney exercised the kind of great care required.
CONCLUSION
For the foregoing reasons, the judgment of the trial court is amended allocating 20 percent fault to Mr. Toney and 80 percent fault to Mr. Lawrence. As previously stated, the initial judgment, totaling $25,653.79 was reduced to Safeway’s policy limit of $20,000. Since 80 percent of that original award exceeds the $20,000 policy limit, the judgment, as reduced on the motion for new trial, is affirmed. Costs of appeal are assessed equally to both parties.
JUDGMENT AMENDED, AND, AS AMENDED, AFFIRMED.

. In addition, Kadezah Jones, also a passenger, testified only to her injuries from the accident. She did not see the accident occur as she could not see over the dashboard. Deandrea Jones also testified regarding the injuries of Tomorra.